IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                           :
UNITED STATES OF AMERICA    :
                           :
        v.                  :        Criminal No. 11-520 (JBS)
                           :
THOMAS REEVES               :
TODD REEVES                 :          **OPINION**
RENEE REEVES                :
SHELLROCK, LLC              :
KENNETH W. BAILEY           :
MARK BRYAN                  :
PAMELA MELONEY              :
HARBOR HOUSE, INC.,         :
                           :
            Defendants.     :
                           :
_____
```

APPEARANCES:

Patrick M. Duggan, Esq. (argued)
Wayne D. Hettenbach, Esq. (argued)
U.S. DEPARTMENT OF JUSTICE
ENVIRONMENTAL CRIMES SECTION
P.O. Box 23985
Washington, D.C. 20026
        and
Matthew T. Smith, Assistant United States Attorney
OFFICE OF THE U.S. ATTORNEY
District of New Jersey
Camden Federal Building & Courthouse
401 Market Street, 4th Floor
Camden, NJ 08101
        Attorneys for the United States of America

William J. Hughes, Jr., Esq. (argued)
COOPER, LEVENSON, APRIL, NIEDELMAN & WAGENHEIM, PA
1125 Atlantic Avenue
3rd Floor
Atlantic City, NJ 08401
        Attorney for Defendant Thomas Reeves
        Co-Counsel for Defendant Shellrock, LLC

Edwin J. Jacobs, Jr., Esq. (argued)
Michael F. Myers, Esq.
JACOBS & BARBONE
1125 Pacific Avenue
Atlantic City, NJ 08401
     Attorney for Defendant Todd Reeves
     Co-Counsel for Defendant Shellrock, LLC

William F. Reilly, Esq. (argued)
WALTMAN & REILLY
23 N. High Street
p.O. Box 520
Millville, NJ 08332
     Attorney for Defendant Renee Reeves

John S. Furlong, Esq. (argued)
FURLONG & KRASNY, ESQS.
Mountain View Office Park
820 Bear Tavern Road
Suite 304
West Trenton, NJ 08628
     Attorney for Defendant Mark Bryan

Justin T. Loughry, Esq. (argued)
LOUGHRY & LINDSAY, LLC
330 Market Street
Camden, NJ 08102
     Attorney for Defendant Pamela Meloney

**SIMANDLE,** District Judge:

## I.   INTRODUCTION

   This matter is before the Court on the government's motion to disqualify defense counsel.  [Docket Item 68.]  Oral argument was held on Tuesday, November 15, 2011.

   The Government moves to disqualify William F. Reilly as counsel for Renee Reeves, and Edwin J. Jacobs as counsel for Todd Reeves.  The Government also moves the court to conduct conflict of interest inquiries into John S. Furlong as counsel for both

Mark Bryan and Harbor House, Inc., as well as William J. Hughes as counsel for both Thomas Reeves and Shellrock, LLC.

Mr. Hughes and Mr. Jacobs have filed opposition to this motion. [Docket Items 77 and 78.]  Mr. Reilly's opposition was filed late on October 26, 2011, but has been considered. [Docket Item 82.]  The hearing regarding Mr. Furlong's representation of Mark Bryan and Harbor House was continued to a subsequent date,[1] while the matter of Mr. Hughes' representation of Thomas Reeves and (with Mr. Jacobs) of Shellrock, LLC, was fully resolved at the hearing[2] and is not the subject of this opinion.

This opinion will be limited to addressing the government's

---

[1] At the hearing, the court conducted a conflict of interest inquiry pursuant to Fed. R. Crim. P. 44(c) as to the propriety of Mr. Hughes' representation of Thomas Reeves and joint representation of Shellrock, LLC, by Mr. Hughes and Mr. Jacobs. After its inquiry, the court found the joint representation proper and personally advised each defendant of the right to the effective assistance of counsel, including separate representation.  Therefore, the government's request for a conflicts inquiry into Mr. Hughes' representation will not be addressed in the court's written opinion as the court conducted its inquiry and stated its findings on the record during oral argument.

[2] At the hearing, Mr. Furlong informed the court that he represented Defendant Mark Bryan and did not represent Harbor House, Inc.  However, Mark Bryan expressed on the record his desire to have Mr. Furlong represent himself and Harbor House, Inc.  The court was unable to conduct a full conflicts inquiry pursuant to Fed. R. Crim. P. 44(c) as to the propriety of this potential joint representation during oral argument because Gary Colbourne, an unindicted individual who is co-owner of Harbor House, Inc., was not present.  Consequently, the court declined to rule on this matter and adjourned it to a later date when Mr. Colbourne could be present.

motion to disqualify Mr. Reilly and Mr. Jacobs.  For the following reasons, the court will grant the government's motion to disqualify Mr. Reilly as counsel for Renee Reeves and the court will deny the government's motion to disqualify Mr. Jacobs as counsel for Todd Reeves.

## II.  BACKGROUND

The instant criminal action involves an alleged conspiracy to violate the Lacey Act and obstruct justice, substantive violations of the Lacey Act, false records and trafficking in illegally taken wildlife provisions, obstruction of justice and obstruction of an agency proceeding.  Multiple defendants are charged including Thomas Reeves, Todd Reeves, Renee Reeves, Shellrock, LLC, Mark Bryan, and Harborhouse, Inc.

These defendants have intertwined relationships.  Thomas Reeves and Todd Reeves are brothers.  Both brothers are 50% co-owners of Shellrock, LLC.  Renee Reeves is the wife of Todd Reeves.  Mark Bryan is one of the owners and operators of Harbor House, Inc., being a 50% shareholder as is his partner, non-defendant Gary Colbourne.

Each attorney's involvement is detailed below.

### A.   William F. Reilly, Esq.

William F. Reilly seeks to represent defendant Renee Reeves.  Mr. Reilly has represented numerous defendants and witnesses at various points throughout this case.  First, Mr. Reilly

4

represented defendants Thomas Reeves and Todd Reeves during the execution of the search warrant on February 4, 2009.  His representation of Thomas and Todd Reeves as well as Shellrock, LLC continued uninterrupted for over two years until June 6, 2011.  During this time, Mr. Reilly met with the prosecutors in an effort to negotiate a pre-indictment plea and was provided with a reverse proffer by the government.

Mr. Reilly also represented Lillian Reeves and defendant Renee Reeves when the government served them grand jury subpoenas.

Mr. Reilly also appeared on behalf of defendant Pamela Meloney and Gary Colbourne, a co-owner of defendant Harbor House, during their grand jury proceedings on June 7, 2011.

Shortly afterwards, the government filed a motion to disqualify Mr. Reilly from representing any witnesses or potential defendants in this case.  This motion was scheduled before Judge Joseph E. Irenas on June 16, 2011, in his capacity as the District Judge hearing grand jury matters.  Before this motion was heard, the government was informed by potential witnesses Peggy Earp and Rosemary Rahe that Mr. Reilly represented them as well.

On June 15, 2011, Mr. Reilly sent a letter to Judge Irenas stating that he "withdraws from representation of any party in this matter" and requested the Court to vacate the June 16

5

hearing.  (Gov't. Ex. 6.)  Judge Irenas cancelled the conflicts hearing in reliance on Mr. Reilly's representations that he would represent no party.

On August 16, 2011, Mr. Reilly then entered an appearance on behalf of Defendant Renee Reeves.  The government argues that due to his representation of numerous parties and witnesses in this case, Mr. Reilly has an unwaivable conflict of interest and must be disqualified from representing Renee Reeves.  In addition, Mr. Reilly's representation of Renee Reeves contradicts his representations to Judge Irenas on June 15 that he would withdraw from the representation of any party in this action.

**B.   Edwin J. Jacobs, Esq.**

Mr. Jacobs represented brothers Thomas and Todd Reeves after Mr. Reilly withdrew.  Mr. Jacobs represented both of these defendants for approximately two months prior to their indictment, and an attorney[3] from the firm was present during handwriting exemplars.  During this time, the attorney did not speak to Thomas Reeves and the attorney's presence at the handwriting exemplar was to observe and ensure that the agents did not attempt to speak to either of the Reeves brothers.  Prior

---

[3] The Government maintains that Louis M. Barbone, Mr. Jacobs' partner, represented the Reeves brothers during the handwriting exmplars.  Mr. Jacobs argues that Mr. Barbone was not present during the handwriting exemplars and that actually an associate, Mr. Steven Funk, was present, which is confirmed by Funk's billing diary ledger.  Mr. Jacobs states that Mr. Barbone was never involved in this case.

to agreeing to the joint representation, Mr. Jacobs had one
forty-minute meeting with Todd Reeves, Thomas Reeves, and Mr.
Reilly.  During this meeting, no confidences were exchanged
between Thomas Reeves and Mr. Jacobs and the entirety of the
meeting took place in the presence of both brothers.  Mr. Jacobs
also represented both brothers during the arraignment and bail
hearing, at which point he advised the brothers that he could no
longer jointly represent both of them and that Thomas Reeves
would need to seek separate counsel.

     After the arraignment, Mr. Jacobs withdrew from the
representation of Thomas Reeves, who is now represented by Mr.
Hughes.  Currently, Mr. Jacobs represents Todd Reeves and jointly
represents Shellrock, LLC, with Mr. Hughes, as it is wholly co-
owned by Todd and Thomas Reeves.

     The government then filed the instant motion to disqualify
Mr. Reilly and Mr. Jacobs.

## III.  DISCUSSION

### A.  The Instant Motion

     The government moves to disqualify Mr. Reilly and Mr. Jacobs
due to the serious potential for an unwaivable conflict of
interest.  The government argues that the Sixth Amendment
includes the right to an attorney's undivided loyalty unhindered
by conflict of interest.  Consequently, an attorney should be

disqualified if there is a showing of a serious potential for a conflict of interest.  The government relies on United States Supreme Court and Third Circuit precedents, as discussed below, as well as several rules of professional conduct including RPC 1.7 (Conflict of Interest), RPC 1.8 (Conflict of Interest: Current Clients), and RPC 1.9 (Duties to Former Clients).

Specifically, as to Mr. Reilly, the government argues that he has represented three other defendants and four potential witnesses in this matter.[4]  The government argues that this presents a serious potential for conflict that would violate Renee Reeves' Sixth Amendment protections, several rules of ethical conduct and multiple attorney-client privileges.  In addition, Mr. Reilly conceded that conflicts existed in his June 15 letter to Judge Irenas.

Mr. Reilly does not deny that he represented three other defendants: Todd Reeves, Thomas Reeves and Pamela Meloney.  Mr. Reilly does not deny that he previously represented four witnesses: Lillian Reeves, Rosemary Rahe, Gary Colbourne and Peggy Earp.  However, Mr. Reilly maintains that any confidential communications which happened between him and Gary Colbourne, Pamela Meloney, or Lillian Reeves were "minimal at best." (Reilly Op. Br. at 7.)  Mr. Reilly accompanied these individuals to the

---

[4] The defendants are Todd Reeves, Thomas Reeves, and Pamela Meloney.  The potential witnesses are Lillian Reeves, Rosemary Rahe, Gary Colbourne, and Peggy Earp.

grand jury proceeding, but these individuals were not called to testify.  Mr. Reilly claims all he did was sit in the office with them and wait to be called.  (Reilly Op. Br. at 7.)  In addition, Mr. Reilly claims he had no communication whatsoever with Rosemary Rahe or Peggy Earp, despite representing them.

Mr. Reilly also has represented Todd Reeves, Thomas Reeves and Renee Reeves in personal and business interests for a number of years and did at times represent Harbor House Seafood, Inc. (Reilly Op. Br. at 5.) However, Mr. Reilly attaches waivers from Thomas Reeves, Todd Reeves and Renee Reeves waiving any potential conflict of interest.

Finally, Mr. Reilly admits that he represented to Judge Irenas during the grand jury proceeding that he would be withdrawing from representation of any party in this matter. However, Mr. Reilly now maintains that this should not preclude his representation of Renee Reeves because she is a defendant in this case, not a witness. (Reilly Op. Br. at 6.)  Mr. Reilly stated in oral argument that his express use of the phrase "any party in this matter" in his letter to Judge Irenas was intended to mean that he would refrain from representing any witnesses in this matter.  Therefore, Mr. Reilly contends that he should not be disqualified from representing Renee Reeves as she is a criminal defendant in this case.

As to Mr. Jacobs, the government argues that his firm's

initial joint representation of Todd Reeves and Thomas Reeves creates a substantial potential for a conflict of interest.  In particular, the government argues if Thomas Reeves decides to accept a government plea offer and Todd Reeves pursues a trial, Mr. Jacobs would be unable to effectively cross examine Thomas Reeves if he were to appear as a government witness.  This potential conflict, the government maintains, warrants disqualification.  Moreover, the government contends that the Court should assume that there were privileged communications between Thomas Reeves and Mr. Jacobs during the joint representation that would impair Mr. Jacobs ability to advocate on behalf of Todd Reeves, due to his duty to Thomas Reeves, a former client, under RPC 1.9.  The government relies on United States v. Provenzano, 620 F.2d 985, 1005 (3d Cir. 1980) (upholding district court's presumption that defendant's attorney had access to privileged information of his former client, who was an important prosecution witness, and finding that such a presumption was appropriate because the court could not inquire into the matter without destroying the confidence).

     In opposition, Mr. Jacobs first cites the heavy burden the government has in establishing that disqualification is justified and argues that disqualification of defense counsel should be a measure of last resort.  Mr. Jacobs cites to Wheat v. United States, 486 U.S. 153 (1988), wherein the Supreme Court warned

10

that "the Government may seek to manufacture a conflict in order
to prevent a defendant from having a particularly able defense
counsel at his side." 486 U.S. at 163.

Furthermore, Mr. Jacobs argues that no confidential
communication was exchanged between his firm and Thomas Reeves.
Mr. Jacobs' communication with Thomas Reeves was limited to a
short forty minute meeting with both brothers and Mr. Reilly,
attendance at a handwriting exemplar session and an appearance at
the brothers' bail hearing.  The associate that attended the
handwriting exemplar with Thomas Reeves submitted an affidavit
and certifies that he did not discuss the government's proposed
charges or exchange any confidential communication with Thomas
Reeves.  In addition, neither Mr. Jacobs or the associate
attended any grand jury proceedings and did not counsel any of
the defendants with regard to them.  Mr. Jacobs maintains that
while the joint representation of the Reeves brothers lasted two
months, minimal if any confidential communication occurred.
Thomas Reeves assents to permitting Mr. Jacobs to serve as
counsel for Todd Reeves, having also consulted with his own
attorney, Mr. Hughes, who likewise has no objection and foresees
no conflict.  Thomas Reeves, Todd Reeves and their attorneys have
also entered into a Joint Defense Agreement permitting free
exchange of confidential information unless rescinded.

Therefore, Mr. Jacobs contends that he should not be

disqualified as Todd Reeves' counsel.

**B. Standard of Review**

The Sixth Amendment to the Constitution guarantees that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. CONST. amend. VI.  "The purpose of providing assistance of counsel is simply to ensure that criminal defendants receive a fair trial." Wheat v. United States, 486 U.S. 153, 159 (1988).  Importantly, in analyzing Sixth Amendment claims, "the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." Id. (citing United States v. Cronic, 466 U.S. 648, 657, n.21 (1984)).  Accordingly, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat, 486 U.S. at 159.

The defendant's right to have counsel of his own choosing is not absolute.  United States v. Voigt, 89 F.3d 1050, 1074 (3d Cir. 1996).  "[W]here considerations of judicial administration supervene, the presumption in favor of counsel of choice is rebutted and the right must give way." Id.  In particular, "the potential for serious conflicts is a consideration of judicial

administration that can outweigh a defendant's right to counsel of choice." Id. at 1075 (citing Wheat, 486 U.S. at 163; United States v. Moscony, 927 F.2d 742, 750 (3d Cir. 1991); Davis v. Stamler, 650 F.2d 477, 480 (3d Cir. 1981)).

The Third Circuit has explained that a district court need not find an actual, existing conflict of interest in determining whether to disqualify counsel on conflict of interest grounds. The district court:

> must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.

Voigt, 89 F.3d at 1076 (citing Wheat, 486 U.S. at 164).

Furthermore, the "likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." Voigt, 89 F.3d at 1076. In particular, joint representation of defendants has been found particularly vulnerable to potential conflict of interest problems.

> Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. . . . [A] conflict may . . . prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.

13

Wheat, 486 U.S. at 160 (citing Holloway v. Arkansas, 435 U.S.
475, 489 (1978)).  "The mere physical presence of an attorney
does not fulfill the Sixth Amendment guarantee when the
advocate's conflicting obligations have effectively sealed his
lips on crucial matters." Id. at 489.

**C. Mr. Reilly**

First, the Court recognizes the presumption favoring Mr.
Reilly as Renee Reeves' choice of counsel.  However, as discussed
more fully below, this presumption is overcome by the potential
for serious conflicts and Mr. Reilly should be disqualified.
Furthermore, Mr. Reilly previously represented to the court that
he would no longer represent any party in this matter, upon which
the court relied, and the court will take Mr. Reilly at his word.

Here, it is undisputed that Mr. Reilly represented three
defendants and four potential trial witnesses prior to
representing Renee Reeves.  In this matter, Mr. Reilly first
represented Todd and Thomas Reeves when the search warrant was
executed.  Prior to this matter, Mr. Reilly admits representing
Todd Reeves, Renee Reeves and Thomas Reeves for a number of years
on personal and business matters.  On the day of the search
warrant, Mr. Reilly examined the search warrant and advised the
government agents that he jointly represented the Reeves brothers
in this matter.  In October, 2010, Mr. Reilly met with the
government as part of ongoing efforts to negotiate a pre-

14

indictment plea agreement for Todd and Thomas Reeves.  The
government provided Mr. Reilly with a reverse-proffer, outlining
the government's evidence against the brothers.

After the plea negotiations were unsuccessful, the
government proceeded with the investigation.  Lillian Reeves and
Renee Reeves were then served with grand jury subpoenas.  Mr.
Reilly then informed the government that he represented Lillian
Reeves and Renee Reeves in addition to Todd and Thomas Reeves.
Mr. Reilly stated that his representation of Lillian and Renee
Reeves was to ensure that they were not abused in the grand jury.

Mr. Reilly then subsequently terminated his representation
of Todd and Thomas Reeves in this matter on June 6, 2011.
However, the following day on June 7, 2011, Mr. Reilly appeared
with Gary Colbourne and Pam Meloney for the grand jury proceeding
and claimed to represent these two witnesses as well.  Mr. Reilly
knew Mr. Colbourne and Ms. Meloney from their employment with
defendant Harbor House, Inc.  Mr. Reilly drove these two
witnesses to the grand jury proceeding and attended a meeting
with them to ensure that the rights of his clients, Mr. Colbourne
and Ms. Meloney, were protected.

On June 10, 2011, the government received letters from Peggy
Earp and Rosemary Rahe advising the government that Mr. Reilly
represented them as well.

Given the numerosity of Mr. Reilly's prior representations

15

of individuals who are indicted defendants or witnesses in this
matter, it is highly probable that Mr. Reilly will be unable to
represent Renee Reeves due to the duties he owes to his large
number of former clients.  This creates a serious potential for a
conflict of interest and if any of these former clients takes the
stand, Mr. Reilly will not be able to effectively cross examine
these witnesses.  The prospect of his cross-examining former
clients who will be called at trial as witnesses is quite likely,
as is the prospect that Renee Reeves may have interests in
addressing the charges against her that diverge from the
interests of principal defendants Todd and Thomas Reeves, both of
whom were Mr. Reilly's long-time clients in this case.

Mr. Reilly also admits to representing Thomas Reeves, Todd
Reeves and Renee Reeves "in personal and business interests" for
a number of years. (Reilly Opp. Br. at 4-5.)  While Todd Reeves,
Thomas Reeves and Renee Reeves have submitted a waiver of
conflict of interests, their waivers are insufficient to cure the
serious potential for conflicts of interest in this case. See
Wheat, 486 U.S. at 160 (holding that no such flat rule exists
whereby waivers cure all problems created by multiple
representations because the federal courts have an independent
interest in ensuring that criminal trials are conducted within
the ethical standards of the profession and that legal
proceedings appear fair to all who observe them).

Renee Reeves will need to make several difficult decisions during this trial including whether to cooperate with the government, whether to invoke her spousal privilege, and whether to take the stand to testify in her own defense.  The outcome of these decisions may be adverse to Todd Reeves or Thomas Reeves or other former clients of Mr. Reilly, but still in her best interest.  Mr. Reilly, due to his former representation of Todd and Thomas Reeves, may be unable to counsel Renee Reeves effectively in making these decisions because of the adverse impact they could have on his former clients.  Mr. Reilly also may be placed in a situation where he will not be able to offer any counsel at all because to do so would result in disclosing confidences of Todd and Thomas Reeves.

In addition, should Thomas Reeves or Todd Reeves take the stand to testify in their own defense, Mr. Reilly will be unable to cross examine them due to his former representation.  Mr. Reilly received detailed reverse proffers from the government outlining the case against these two defendants.  During oral argument, Mr. Reilly admitted to discussing these reverse proffers with the Reeves brothers and exchanging confidential communication.  Therefore, Mr. Reilly may be unable to effectively cross examine Todd or Thomas Reeves should they decide to testify, and he may be ethically prevented from calling witnesses who may be exculpatory to his client but inculpatory to

a former client.

Further, Mr. Reilly previously represented to Judge Irenas just a few months ago that he would not be representing "any parties in this matter" and withdrew from the case.  This withdrawal letter was prompted by the government filing a motion with Judge Irenas to disqualify Mr. Reilly from representing any witnesses or potential defendants in this matter.  This motion was set for June 16, 2011.  Mr. Reilly's letter was sent on June 15, 2011, and consequently, the motion hearing was cancelled.  In this letter, Mr. Reilly specifically states:

> I have had lengthy discussions with my clients relative to Mr. Hettenbach's objections.  It seems to the undersigned that it would be more prudent and cost efficient for my clients that the undersigned withdraw from representation in same rather than waste monetary assets arguing Mr. Hettenbach's objections.

> Therefore, this will confirm that the undersigned hereby **withdraws from representation of any party in this matter** and the necessity of a hearing tomorrow is thereby eliminated and I will advise Mr. Hettenbach of the same.

(Gov't. Ex. 6, Letter from William F. Reilly to Judge Irenas, June 15, 2011)(emphasis added).

During oral argument, Mr. Reilly stated that by "any party in this matter" he really meant "any witnesses" and this letter should not be read to prevent him from representing "targets" such as Renee Reeves.  This interpretation of Mr. Reilly's letter contradicts the plain meaning of the phrase "any parties" and strikes this court as an impermissible (and incoherent) attempt

18

by Mr. Reilly to eschew his previous commitment to refrain from representing any individuals - witness or defendant - in this case.  Moreover, in reliance upon Mr. Reilly's letter, the hearing on the government's previously filed motion to disqualify was cancelled.  For Mr. Reilly to ignore the plain meaning of his own words and make an appearance on behalf of Renee Reeves two months after he withdrew his representation of Renee Reeves is disingenuous and calls into question his candor to the court.  It is disappointing that Mr. Reilly's conduct requires a motion and a court's order to remind him of the promise he made when he previously withdrew from representation of Renee Reeves.

Therefore, Mr. Reilly will be disqualified from representing Renee Reeves.  While there is a presumption in favor of Renee Reeves' choice of counsel, Mr. Reilly's representation of multiple defendants and witnesses in this matter creates a serious potential for a conflict of interest which overcomes this presumption and requires Mr. Reilly's disqualification.  In addition, the court considers Mr. Reilly's previous decision to withdraw as counsel to have been necessary, and consequently the court will grant the government's motion and take Mr. Reilly at his word - that he "withdraws from representation of any party in this matter."

**D. Mr. Jacobs**

There is a closer question with regard to whether Mr. Jacobs should be disqualified as Todd Reeves' counsel.  Unlike Mr. Reilly who had a history of representing multiple defendants and witnesses in this case, some for a number of years, Mr. Jacobs' law firm only represented one other defendant, Mr. Thomas Reeves, for a brief two month period of time during which not much of consequence occurred in that representation.  Mr. Jacobs claims that minimal if any confidential communication was exchanged to Mr. Jacobs from Thomas Reeves and that there is no conflict of interest problem.  Further, Mr. Jacobs argues that the Joint Defense Agreement executed by Thomas Reeves and Todd Reeves and their respective attorneys alleviates any conflict of interest problem because they have "agreed to reveal legal strategies and theories, documents and confidences, and information within this arrangement regarding potential and/or possible joint defense." (Jacobs Ex. 9 ¶ 5).

The issue before the Court is whether this two month dual representation of Thomas and Todd Reeves is substantial enough to warrant disqualifying Mr. Jacobs and overcome the presumption in favor of Todd Reeves' choice of counsel.  In addition, the court must also consider the impact of the Joint Defense Agreement executed by Todd and Thomas Reeves and their respective counsel, Mr. Hughes and Mr. Jacobs.

The Third Circuit has held that a district court is not

20

required to make explicit findings that an attorney knew specific facts which would present a conflict of interest.  Instead, a district court is entitled to "assume as much, since [the court] could not actually inquire about the matter without thereby [himself] destroying the confidence" when presented with sufficient evidence of the prior attorney-client relationship. United States v. Provenzano, 620 F.2d 985, 1005 (3d Cir. 1980)(disqualifying an attorney from representing a defendant where the attorney represented a government witness in a murder conviction and events of that period would be useful for impeaching the witness).

Importantly, "the court must have sufficient evidence before it to suggest that disqualification [is] appropriate." United States v. Voigt, 89 F.3d at 1077.  A court must evaluate "the facts and circumstances of each case" to determine whether the presumption in favor of a defendant's choice of counsel is overcome. Id. at 1076.  The Third Circuit has recognized that a "Defendant's choice of counsel is not to be dealt with lightly or arbitrarily.  That choice should not be interfered with in cases where potential conflicts of interest are highly speculative." United States v. Flanagan, 679 F.2d 1072, 1076 (3d Cir. 1982).

The government has relied on several cases in support of its motion to disqualify Mr. Jacobs in this case.  As the inquiry into whether to disqualify a defendant's choice of counsel is

fact sensitive, the court will analyze the factual background of the government's cited precedents as well as the legal precepts embodied therein.

First, the government relies heavily on <u>Wheat v. United States</u>, <u>supra</u>, and argues that the court has broad discretion to disqualify counsel for actual as well as potential conflicts. While <u>Wheat</u> did recognize the "likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict," the Supreme Court also stated that "permitting a single attorney to represent codefendants . . . is not *per se* violative of constitutional guarantees of effective assistance of counsel." <u>Id.</u> at 160, 162-63.  In reviewing the district court's disqualification of defense counsel, the Supreme Court reasoned:

> the District Court was confronted not simply with an attorney who wished to represent two coequal defendants in a straightforward criminal prosecution; rather, Iredale [the attorney] proposed to defend three conspirators of varying stature in a complex drug distribution scheme.

<u>Id.</u> at 163-64.  Of these three co-defendants represented by the attorney, one co-defendant who played a lesser role in the conspiracy pled guilty and had agreed to cooperate with the government and testify as a government witness at trial.  <u>Id.</u> at 155, 164.  Another co-defendant and client of the attorney had obtained a verdict of acquittal in a previous trial and was "one of the alleged kingpins of the distribution ring."  <u>Id.</u> at 164.  Furthermore, this previous client had entered into plea

22

negotiations with the government on other charges, and if the plea was rejected by the court, the subsequent trial and probable testimony of the previous client "would create an ethical dilemma for Iredale [the attorney] from which one or the other of his clients would likely suffer." Id. at 164.  Therefore, the Supreme Court upheld the District Court's disqualification of the attorney from representing the third co-defendant because of the serious potential for conflict after evaluating the facts and circumstances of the case.  Id. at 164.

Wheat is clearly distinguishable from the instant matter. First, Mr. Jacobs represented the Reeves brothers for a brief two-month period of time and immediately after the bail hearing, advised the brothers against joint representation. As a result, both brothers are now represented by separate counsel.  Unlike the attorney in Wheat who represented one co-defendant extensively through trial and obtained an acquittal verdict, Mr. Jacobs' representation was limited to the last two months of the pre-indictment period.  Second, the Reeves brothers, unlike the co-defendants in Wheat, are co-equal defendants in the instant prosecution.  One brother is not alleged to be a ring-leader while the other is charged with a lesser role.  Here, both brothers face the same charges and are co-equal in the prosecution.  Thirdly, both brothers, while represented by separate counsel, are represented pursuant to a Joint Defense

23

Agreement.  No guilty pleas have been entered and when questioned at oral argument, both Todd and Thomas Reeves affirmed their commitment to the Joint Defense Agreement.  Unlike Wheat, where two of the three co-defendants had either pled guilty or submitted a plea agreement to the court, here, the Reeves brothers have shown no intention of pleading and are united in their joint defense.  Therefore, the Wheat case is clearly distinguishable from the instant matter when analyzed in light of the facts and circumstances surrounding each case.

Next, the government relies on United States v. Stewart, 185 F.3d 112 (3d Cir. 1999), in which a district court disqualified counsel despite having signed waivers of conflicts of interest by the defendant and former clients.  In Stewart, an attorney sought to represent a defendant in a criminal trial.  This attorney had previously represented four government witnesses as defendants in a related civil matter.  These four previous clients were given grants of immunity by the government and agreed to testify against the defendant in his criminal trial.  Id. at 120-121.

The Stewart case is also clearly distinct from the instant matter.  In Stewart, there was more than a serious potential for a conflict of interest; there was "real conflict" because the attorney had represented four of the government's witnesses who would be testifying against his current client.  Id. at 122.  The

24

district court concluded, and the Third Circuit affirmed, that the attorney would not be able to effectively cross examine his four former clients due to his divided loyalties. Id. at 121-22.

Here, Mr. Jacobs currently represents one defendant and his former client, Thomas Reeves, is represented by separate counsel. Mr. Jacobs did not represent Thomas Reeves for an elongated period time like the attorney in Stewart and his joint representation was limited to two months during the pre-indictment period. Importantly, Mr. Jacobs and Mr. Hughes, and their respective clients, have executed a Joint Defense Agreement and have expressly agreed to share all confidences and litigation strategies. Neither brother has pled guilty or agreed to testify for the government. In contrast to Stewart where the attorney previously represented four government witnesses who would be testifying at trial, Mr. Jacobs previously represented only one other co-defendant who now has separate representation, cannot be called as a government witness and has entered into a Joint Defense Agreement with Mr. Jacobs, Mr. Hughes and Todd Reeves. Mr. Jacobs and Mr. Hughes have also demonstrated that the brothers' interests are totally aligned and that the prospect of divergence of interests is not probable. Therefore, Stewart is distinguishable from the instant matter and is not supportive of the government's motion.

During oral argument, the government frequently relied on

25

<u>United States v. Moscony</u>, 927 F.2d 742, 748-49 (3d Cir. 1991),
for the proposition that a court should use its broad discretion
to disqualify a defendant's choice of counsel to avoid the
'brewing pot of possibilities' of an actual conflict.  However,
in citing <u>Moscony</u> during oral argument, the government did not
address how the <u>Moscony</u> court emphasized the importance of the
defendant's right under the Sixth Amendment to "secure counsel of
his own choice" and that a "primary purpose of the Sixth
Amendment is to grant a criminal defendant control over the
conduct of his defense, as it is he who suffers the consequences
if the defense fails." <u>Moscony</u>, 927 F.2d at 748.

Moreover, the <u>Moscony</u> case involved an "actual conflict of
interest," not the remote potential for a conflict of interest as
is the case here.  <u>Id.</u> at 750.  In <u>Moscony</u>, the attorney
represented three government witnesses and two defendants during
the grand jury investigation.  The government moved to disqualify
the attorney and the three government witnesses who were former
clients of the attorney also joined in the motion.  <u>Id.</u> at 747.
All three government witnesses testified to having disclosed
confidential information to the attorney during their former
representation.  <u>Id.</u> qt 748.

The government maintained at oral argument that the <u>Moscony</u>
case was similar to the instant action because the <u>Moscony</u> case
involved real estate fraud which implicated office procedures and

26

policies and the instant matter involves violations of the Lacey
Act which also implicate office procedures.  While office
procedures may be relevant to the government's case, this
superficial similarity is insufficient to disqualify Mr. Jacobs
and the government's argument overlooks the facts that are
relevant to the disqualification motion.  Here, Mr. Jacobs has
not previously represented individuals who plan to testify as
government witnesses.  Mr. Jacobs' former client, Thomas Reeves,
does not support the government's motion to disqualify and has
not come forward to argue that confidential communication has
been exchanged which would be adverse to him.  Indeed, the two
cases are quite dissimilar because here, Mr. Jacobs' former
client has executed a Joint Defense Agreement with his brother
and counsel and has consented to exchanging confidential
information to Mr. Jacobs to aid his defense.  Whereas Moscony
involved an actual conflict of interest with three government
witnesses, the instant matter does not involve an actual conflict
and the government's argument regarding the potential for a
conflict is highly speculative.

     In addition, the government cites to Provenzano, supra, 620
F.2d 985, for the proposition that a district court may assume
the existence of confidential communication by virtue of an
attorney's prior representation.  In Provenzano, the Third
Circuit reasoned that a court cannot question into whether the

attorney knew specific facts that would have involved the attorney in a conflict because to do so would destroy the confidence.  However, the Third Circuit found that a district court could assume that the attorney knew specific confidential information based on the circumstances of the attorney's previous representation of the government's chief witness on a murder conviction.  The district court concluded that confidences relating to the witness's murder conviction and events of that period would be useful to impeach him as a witness against the defendant.  However, since the witness was the attorney's former client, the attorney had divided loyalties between effectively representing the defendant and maintaining the confidences of his prior attorney client relationship. Id. at 1004-05.

In contrast to Provenzano, where the disqualified attorney had represented a government witness in a murder conviction,  Mr. Jacobs began his dual representation in June 2011, prior to an indictment and represented Thomas Reeves for a very short period of time, having no meaningful communications with the government on behalf of either client.  Mr. Jacobs did not engage in the type of arduous representation of Thomas Reeves like the representation at issue in Provenzano which permitted the district court to assume confidential communication was exchanged without specific findings of fact.  Indeed, Mr. Jacobs and his associate were never in Thomas Reeves' presence without Todd

Reeves also being present, so it is quite evident that Thomas never shared a confidence with Jacobs that he would not have wanted Todd to know.  Furthermore, once an indictment was issued, Mr. Jacobs advised Todd and Thomas Reeves that he could no longer represent them jointly.  After the August 16, 2011, bail hearing, Mr. Jacobs referred Thomas Reeves to another attorney, Mr. Hughes, who continues to represent Thomas Reeves.  Importantly, Mr. Hughes, Mr. Jacobs, and the Reeves brothers have executed a Joint Defense Agreement and have agreed to share confidential information and litigation strategies.  Thomas Reeves is not a government witness and Mr. Jacobs' loyalties are not divided between his former and current client as a result of the Joint Defense Agreement.  Therefore, Provenzano is distinguishable from the instant case and the court will not assume, without further evidence from the government, that Mr. Jacobs should be disqualified.

In its reply and during oral argument, the government heavily relied on United States v. Voigt, supra.  In Voigt, the Third Circuit determined that even though the District Court did not hold an evidentiary hearing, there was sufficient evidence presented during oral argument that disqualification was appropriate.  The defendant, Voigt, in this case was charged with money laundering and tax evasion convictions due to his role as:

> the mastermind of a pernicious "advance fee" scheme
> whereby Voigt, operating under the auspices of the

29

> Euro-American Money Fund Trust, would obtain substantial
> fees in advance from, respectively, unsuspecting loan
> applicants and potential investors for various loans and
> investments that never materialized. Over a three-year
> period the Trust took in a total of 18.5 million dollars.

89 F.3d at 1059.  In the beginning of the investigation, Voigt's attorney, Binns, operated as the attorney for the Trust as well as other Trust members who came under investigation by the government and sent a letter to the government to that effect. Binns spent a significant amount of time with Mercedes Travis, an alleged co-conspirator with Voigt and a co-defendant in the case. After Voigt was indicted, Binns entered an appearance on behalf of Voigt and was the third attorney to join Voigt's defense team. Shortly after his appearance, the former client, Travis, filed a motion to disqualify Binns.  Travis submitted an affidavit detailing her professional relationship with Binns and Binns' previous representation of the Trust and its members in response to government subpoena's. Id. at 1071-72.

In evaluating whether to disqualify Binns, the district court examined numerous pieces of evidence regarding Binns' prior representation of the Trust, Travis and other members to determine whether there was a conflict.  This evidence included correspondence between Binns and the government stating that Binns represented multiple defendants including the Trust, Voigt, Anderskow (a member of the trust) and Dunn (another member of the trust); (2) a memorandum and notes from Travis regarding

30

litigation strategies and mentioning Binns; (3) communications with investors in the trust directing these investors to contact Binns; (4) Travis' sworn affidavit setting forth her relationship with Binns; (5) grand jury transcripts; (6) and "a very real possibility" that Anderskow would testify at trial.  Id. at 1076-78.  Travis also alleged that Binns was in possession of two boxes of Trust documents and personal material, including a tape of a two-and-one-half-hour telephone conversation between Voigt, Dunn and herself. Id. at 1072.  After reviewing this evidence, the district court decided and the Third Circuit affirmed, that the evidence supported a serious potential for a conflict of interest which required Binns' disqualification.

In this case, the government has provided sparse support for its motion for disqualification of Mr. Jacobs.  The government has attached as an exhibit a letter from Mr. Jacobs indicating his joint representation of Todd and Thomas Reeves dated on June 20, 2011.  It is undisputed that this joint representation ended on August 22, 2011 when Mr. Hughes entered his appearance on behalf of Thomas Reeves.

Unlike Voigt, where there was correspondence, litigation notes, and substantial involvement by the attorney in the investigative stage of the litigation, here, there is little evidence to support the government's contention that this is a serious potential conflict of interest.  Thomas Reeves has

31

knowingly and intelligently waived any conflict of interest and does not object to Mr. Jacobs' serving as his brother's counsel. There is no evidence that Mr. Jacobs engaged in confidential communications with Thomas Reeves in the absence of Todd Reeves. Most significantly, both brothers have executed a Joint Defense Agreement and have consented to sharing confidences and litigation strategies.  There is no evidence before the court that it is a "very real possibility" that Thomas Reeves will rescind the Joint Defense Agreement and take the stand.  <u>Voigt</u>, 89 F.3d at 1078.  Without more, there is not sufficient evidence for which the court can find a serious potential for a conflict of interest.  Indeed, at oral argument, the government's motion was based primarily on generalizations and speculation, but as <u>Voigt</u> states, "a trial court may not deny a defendant's right to counsel of choice on the basis of generalizations alone." <u>Id.</u> at 1075.

Finally, the government also relies on <u>Davis v. Stamler</u>, 650 F.2d 477, 480 (3d Cir. 1981), in support of its argument that the court should assume, without evidence or findings of fact, that confidential communication was exchanged between Thomas Reeves and Mr. Jacobs sufficient to disqualify Mr. Jacobs from the representation of Todd Reeves.  However, in <u>Davis</u>, the district court was presented with sufficient evidence of the prior attorney-client relationship on which to base its assumption that

confidential communication was exchanged.  In Davis, an attorney
was disqualified from representing his client who was the former
president of a company indicted for illegally converting
corporate assets.  Id. at 478.  The evidence presented to the
trial judge at the disqualification hearing included an affidavit
that the attorney was counsel for the victim corporation when his
client was being investigated, that the attorney attended board
meetings of the corporation where his client's investigation was
discussed, and the attorney served as acting president of the
corporation for two months after his client resigned.  Id. at
480.

Unlike Davis, the government has presented no factual basis
to permit the court to assume confidential information was
exchanged.  While Mr. Jacobs did represent both Todd and Thomas
Reeves for two months, there is no evidence before the court that
Mr. Jacobs and his firm did anything beyond perfunctory measures
in representing the defendants at a bail hearing and during the
handwriting exemplar.  After the bail hearing, Mr. Jacobs advised
Thomas Reeves to retain separate counsel which he did.  The
brothers have since executed a Joint Defense Agreement.  Without
more, this joint representation does not rise to the level of a
serious potential for a conflict of interest and the court is
without a factual basis to assume that sufficient confidential
communications took place.

The potential conflict of interest between Todd and Thomas Reeves in this case is "highly speculative" and "merely a possibility." Flanagan, 679 F.2d at 1076.  This is insufficient to overcome Todd Reeves' right to have the counsel of his choice. At the hearing on this motion, the particulars of Mr. Jacobs' brief joint representation of Thomas and Todd Reeves were discussed in detail.  Mr. Jacobs had one forty-minute meeting with Todd Reeves, Thomas Reeves, and Mr. Reilly at the inception of his joint representation.  During this meeting, no confidences were exchanged between Thomas Reeves and Mr. Jacobs and the entirety of the meeting took place in the presence of both brothers.  The brothers were then subpoenaed by the government to supply handwriting exemplars and Mr. Jacobs sent an associate, Mr. Funk, with both brothers to the handwriting exemplar.  As affirmed in the associate's affidavit, no confidential communication was exchanged between the associate and Thomas Reeves.  Mr. Funk's communication with the brothers was limited to advising them that they were under no obligation to make any statements to the agents.  Indeed, Mr. Funk did not even stay to attend the entire handwriting exemplar.  Afterwards, the brothers were arrested and Mr. Jacobs and another associate attended the bail hearing.  Prior to the bail hearing, Mr. Jacobs advised both brothers that now that there was an indictment, he would be unable to represent both of them.  Since Mr. Funk had engaged in

34

communication with Todd Reeves, Mr. Jacobs advised the brothers he would continue to represent Todd Reeves.  Less than a week after the bail hearing, Mr. Hughes entered his appearance on behalf of Thomas.

Shortly thereafter, the brothers, Mr. Jacobs and Mr. Hughes executed a Joint Defense Agreement wherein they agreed to share litigation strategies and confidences.  At oral argument, Mr. Hughes represented that he had discussed Mr. Jacobs' representation of Todd Reeves with Thomas Reeves and advised Thomas Reeves that he could seek the disqualification of Mr. Jacobs.  Mr. Hughes represented to the court that Thomas Reeves waived any conflict of interest and was completely committed to the Joint Defense Agreement.

The Court finds that there is no indication in present circumstances to warrant a conclusion that a serious potential for a conflict of interest between Todd and Thomas Reeves exists in this case.  The facts of this case are clearly distinguishable from all the cases relied upon by the government.  Furthermore, the court is mindful of the presumption in favor of the defendant's choice of counsel.  The court is not permitted to disqualify a defendant's choice of counsel based on generalizations or mere speculation.  The record reflects a high degree of cooperation and alignment of interests between Todd and Thomas Reeves and their separate counsel, manifested in the

35

statements of both defendants and their attorneys to this Court, and memorialized in the Joint Defense Agreement.  Under all the circumstances, the waivers of potential conflicts by Todd and Thomas Reeves arising out of Mr. Jacobs' brief prior representation of Thomas Reeves should be accepted.  Therefore, the government's motion to disqualify Mr. Jacobs is denied.

Finally, at oral argument, Mr. Jacobs brought to the court's attention United States v. Treffinger, Cr. No. 02-795 (D.N.J.)(JWB).  In that case, Chief Judge Bissell declined to disqualify defense counsel.  In lieu of disqualifying the defendant's choice of counsel, the court accepted the defendant's waiver of conflict of interest and appointed standby counsel to handle any potential cross examination in case defense counsel's former client testified.  No written opinion was entered in Treffinger, and the Court declines to impose the burden of standby counsel where the prospect of this device's utility presently seems remote.  Instead, the Court and counsel shall monitor developments as the trial date (May 21, 2012) approaches. The Court will revisit this issue upon application of any counsel or party if circumstances change.  The Court is confident that Mr. Hughes and Mr. Jacobs are well-acquainted with their obligations to so inform the Court of any such change, such as a decision by Thomas or Todd Reeves to enter a change of plea or to

rescind the Joint Defense Agreement.[5]

## IV.   CONCLUSION

The government's motion to disqualify is granted in part and denied in part.  The court will grant the government's motion to disqualify Mr. Reilly as counsel for Renee Reeves for two reasons.  First, while there is a presumption in favor of Renee Reeves' choice of counsel, Mr. Reilly's extensive representation of multiple defendants and witnesses in this matter creates a serious potential for a conflict of interest which overcomes this presumption and requires Mr. Reilly's disqualification.  Second, Mr. Reilly previously represented to the court that he recognized the serious potential for a conflict of interest and withdrew from representing any party in this matter.  The court considers Mr. Reilly's initial decision to withdraw as counsel to be necessary and proper and consequently, the court will grant the government's motion and disqualify Mr. Reilly.

The court will deny the government's motion to disqualify Mr. Jacobs.  First, the court recognizes the presumption in favor of Todd Reeves' choice of counsel.  This presumption was not

_____

[5] The Court is amenable to setting a deadline date for entry of guilty pleas before trial as a case management device in this multi-defendant case to further reduce the prospect that a last-minute change of circumstances would necessitate a change of trial counsel.  This will be discussed upon request of any counsel.

outweighed by a serious potential for a conflict of interest. The government's concerns were not substantiated by evidence and were based primarily on generalizations and speculation.  This is insufficient to displace a defendant's right to counsel of his choice which is protected by the Sixth Amendment, and consented thereto by Thomas Reeves with the assistance of new counsel, as well as by Todd Reeves.

The accompanying Order will be entered.


**December 2, 2011**
Date

    **s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge